UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN BEAVER and LAURIE BEAVER, <br><br> Plaintiffs, <br><br> v. <br><br> OMNI HOTELS MANAGEMENT CORPORATION, a Delaware Corporation; LC BROKERAGE CORP., a Delaware Corporation; LC INVESTMENT 2010, LLC, a Delaware Limited Liability Company; KELLY GINSBERG, an individual; WILLIAM IMS, an individual; BRETT ALEXANDER COMBS, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 20-cv-00191-AJB-KSC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS.** <br><br> **(Doc. Nos. 19, 20)** |

Before the Court are two motions to dismiss—one filed by Defendants Kelly Ginsberg ("Ginsberg), William Ims ("Ims"), and Alexander Combs ("Combs") (collectively, "Broker Defendants"); and another filed by Defendants Omni Hotels Management Corporation ("Omni), LC Brokerage Corp. ("LC Brokerage"), and LC Investment 2010, LLC ("LC Investment"). (Doc. Nos 19, 20.) Plaintiffs Dean Beaver and Laurie Beaver filed an opposition to the motions to dismiss, to which Defendants replied.

(Doc. Nos. 24, 26.) For the reasons set forth, the Court **GRANTS IN PART and DENIES IN PART** the motions.

## I. BACKGROUND[1]

Plaintiffs are husband and wife, who jointly own a villa located in the Omni La Costa Resort and Spa ("Resort"), which is owned by LC Investment. Like approximately 98% of villa owners at the Resort, Plaintiffs rent their villa pursuant to the terms of a Rental Management Agreement ("RMA") with LC Brokerage, a California-licensed real estate brokerage company. LC Brokerage is an affiliate of Omni, the manager of the Resort.

The core of Plaintiffs' claims concern Omni's alleged years-long scheme to self-deal through tortious and fraudulent interference with and management of the villa rental program under the RMA. According to Plaintiffs, although LC Brokerage is ostensibly charged with operating the rental program, it has quietly abdicated its responsibilities to Omni, which has used and abused its power under the RMA to intentionally steer guests into its own hotel rooms rather than the villas—causing Plaintiffs and other villa owners to lose millions of dollars.

In addition, all villas are governed by the Unit Maintenance and Operations Agreement ("UMA"), which entitles LC Investment (another Omni affiliate) to $100 per night or 20% of a villa owner's nightly rental revenue, if the owner opts not to use LC Brokerage as its managing agent. Plaintiffs state that this high cost of leaving the rental program forces villa owners into Omni's program, because it is too expensive to rent outside of Omni's control. Plaintiffs claim that Omni, LC Brokerage, LC Investment, and the individual brokers-of-record for LC Brokerage (Ginsberg, Ims, and Combs), have perpetrated this RICO scheme to defraud by using LC Brokerage as an enterprise. Plaintiffs bring the instant putative class action complaint against Defendants on behalf of themselves and all others similarly situated ("Class").

---

[1] The following facts are taken from Plaintiffs' complaint and are construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d. 1235, 1247 (9th Cir. 2013).

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, i.e. whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the motion, the court "must accept as true all of the allegations contained in a complaint," but it need not accept legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.     DISCUSSION

Plaintiffs' complaint alleges the following causes of action: Breach of Contract, Intentional Interference with Contract, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Violations of Bus. & Prof. Code § 17200 et seq., Violations of 18 U.S.C. § 1962(c), Violations of 18 U.S.C. § 1962(d), Declaratory Relief, Unjust Enrichment, and Accounting. Defendants raise various challenges to these claims. In addition, Plaintiffs argue that Omni and LC Brokerage are precluded from raising certain arguments they raised in a prior litigation in San Diego Superior Court against a different villa owner ("*Erskine* lawsuit").[2] These issues are discussed in turn.

---

[2] On a motion to dismiss, the Court may take judicial notice of documents outside of Plaintiffs' complaint that are "matters of public record" as long as the facts noticed are not "subject to reasonable dispute." *Intro–Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir.2007) (citations omitted); *see also* Fed. R. Evid. 201(b). As such, the Court grants the parties' respective requests for judicial notice of exhibits attached to Doc. Nos. 25 and 26 as they contain matters of public record and are not subject to reasonable dispute. *See Intro–Plex Technologies, Inc.*, 499 F.3d at 1052; *Rey's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other verifiable documents from an earlier related litigation).

### 1) Issue Preclusion

Offensive nonmutual issue preclusion is appropriate only if (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007). "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997).

Plaintiffs contend that issue preclusion applies to bar Omni and LC Brokerage from arguing that the RMA permitted LC Brokerage to prioritize rental of hotel rooms over the villas, that Omni could not be sued directly under the RMA, and that the RMA disclaimed any fiduciary duties of LC Brokerage or Omni connected to their management of the rental program. According to Plaintiffs, after a full trial on the merits in the *Erskine* lawsuit, the state court judge found that Omni and LC Brokerage breached their obligations under the RMA by, amongst other things, failing to adequately price the villas and steering customers into the hotel. The state court documents, however, do not fully support Plaintiffs' position because they do not clearly show "with clarity and certainty what was determined by the prior judgment." *Offshore Sportswear, Inc.*, 114 F.3d at 850.

While the state court's "Final Statement and Decision" and "Amended Judgment" state that both the villa owner and LC Brokerage and Omni "breached their obligations," the documents do not contain any express finding on whether the RMA permitted LC Brokerage to prioritize hotel rooms over the villas, whether Omni could be sued under the RMA, and whether the RMA disclaimed any fiduciary duties. (Doc. Nos. 25-9 at 5; 26-2 at 6.) [3] The state court documents also do not identify which provision of the RMA was found to have been breached.

---

[3] The pinpoint page citations refer to the ECF-generated page numbers at the top of each filing.

Moreover, unlike here, the *Erskine* judge was tasked with deciding whether either side's actions were excused on the basis of an anticipatory breach by the other side. (*See* Doc. Nos. 25-9 at 5 ("Both sides had competing burdens of proof and the Court cannot say that it was persuaded that either's case was more likely than not true than the others."); 26-2 at 6 ("[N]either side was able to prove an anticipatory breach").) Indeed, because the judge found that "both parties breached their obligations, with no side clearly breaching first," neither was entitled to damages and neither was a prevailing party. (Doc. Nos. 25-9 at 5, 6; 26-2 at 6, 7.) Thus, without sufficient clarity and certainty on what was specifically determined by a prior judgment—especially where that judgment resulted from a factually distinct case—the Court does not find that Plaintiffs have met their burden of showing that issue preclusion is appropriate in this case. As such, the Court proceeds to analyze the sufficiency of Plaintiffs' causes of action against Defendants' challenges.

**2) Breach of Contract**

Plaintiffs alleges that LC Brokerage and Omni are liable for a breach of contract because under the RMA, LC Brokerage was appointed as the "sole" and "exclusive" rental agent to act on behalf of villa owners. Plaintiffs' claims that LC Brokerage abdicated its responsibilities under the RMA to Omni, which used its control over the rental program to price the villas for its own advantage, rather than to maximize the revenues of villa owners. Defendants move to dismiss Plaintiffs' breach of contract claim because (1) Omni is not a signatory to the RMA and (2) the express terms of the RMA reveal that LC Brokerage's conduct does not amount to a breach.

As to the first argument, the face of the complaint makes clear that Omni is not a signatory to the RMA. Consequently, Omni is not a party to the contract and therefore cannot be liable for a breach under the RMA. *See Clemens v. Am. Warranty Corp.*, 193 Cal.App.3d 444, 452 (1987) ("Under California law, only a signatory to a contract may be liable for any breach."); *Tri-Continent Internat. Corp. v. Paris Sav. & Loan Assn.*, 12 Cal.App.4th 1354, 1359 (1993) ("[Plaintiff] cannot assert a claim for breach of contract against one who is not a party to the contract."). Plaintiffs maintain that the breach of

contract against Omni should be sustained because they have alleged that Omni and LC Brokerage are alter-egos. However, apart from listing that one of the common questions among the class members is "[w]hether Omni is an alter-ego of LC Brokerage," the complaint contains no other allegations to invoke the alter ego doctrine. (Doc. No. 1 at 23.) Plaintiffs must plead more. Indeed, there is no allegation that Omni is LC Brokerage's alter ego, nor are there facts to support the alter ego elements of (1) unity of interest and ownership and (2) inequitable result if the doctrine is not applied. *See Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011). Because Omni is not a signatory to the contract and Plaintiffs have not adequately pled the alter ego doctrine, the Court finds that Plaintiffs have not sufficiently stated a breach of contract claim against Omni. Accordingly, Plaintiffs' breach of contract claim against Omni will be **DISMISSED WITH LEAVE TO AMEND**. Inclusion of additional facts may cure the aforementioned deficiencies. *See* Fed. R. Civ. P. 15(a); *Cook v. Northern California Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

Defendants' second argument against Plaintiffs' breach of contract claim is one of contract interpretation. In Defendants' view, the RMA expressly permits the conduct that Plaintiffs allege is a breach. "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)). "Language in a contract must be interpreted as a whole and in the circumstances of the case." *Id.* (citing *Bank of W. v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992)). If the language "leaves doubt as to the parties' intent," *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986), the motion to dismiss must be denied. *Monaco*, 554 F. Supp. 2d at 1040.

The Court finds that, at this stage of the proceeding, Plaintiffs have raised a reasonable interpretation of the RMA. In Plaintiffs' view, pursuant to the terms of the RMA, LC Brokerage was to act as their "exclusive rental agent" with the "sole and exclusive authority" to "set rental rates" for villas and required to "maximize the rental receipts" on behalf of villa owners. (Doc. Nos. 1 at 6, 7; 1-2 at 3) Plaintiffs allege that "[t]he rental program was given to LC Brokerage rather than Omni to guard against the inherent conflict-of-interest between Omni's incentive to rent its own hotel rooms — where Omni collects all of the revenue — before renting villas, where Omni collects only a share of the revenue." (Doc. No. 1 at 7.) And although the RMA provides that "Agent [LC Brokerage] shall retain, hire, supervise and discharge all labor and employees required for rental of the Property," Plaintiffs claim that the RMA does not allow LC Brokerage to delegate all of its responsibilities to Omni without supervision. (Doc. No. 1-2 at 4.) The Court finds that Plaintiffs' interpretation of the duties owed and potential breach under the RMA is grounded in specific terms of the contract for which they offer a reasonable interpretation. Because Plaintiffs have raised a reasonable interpretation of the RMA, dismissal of the breach of contract claim against LC Brokerage is improper at this stage. *See Monaco*, 554 F. Supp. 2d at 1040.

**3) Intentional Interference with Contract**

Plaintiffs allege that Omni intentionally interfered with the contract (the RMA) between Plaintiffs and LC Brokerage. Omni moves to dismiss this cause of action as barred by the statute of limitations. The parties do not dispute that California law applies. "The limitations period for an intentional-interference-with-contract claim is within 'two years' of the claimant 'discovering the loss or damage suffered.'" *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-CV-01893-HRL, 2016 WL 3017552, at *4 (N.D. Cal. May 26, 2016) (alterations omitted) (quoting Cal. Code Civ. P. § 339(1)).

On the face of the complaint, Plaintiffs discovered Omni's alleged interference with the RMA in October or August of 2017 and filed their complaint in January 2020—beyond the two-year statute of limitations period. Plaintiffs contend, however, that because they

allege an ongoing scheme of interference with the RMA by Omni, their claim is timely under the continuing violation doctrine. Defendants retort that neither the continuing tort doctrine or continual accrual theory have been applied to intentional interference torts. The Court agrees. *See DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 949 (C.D. Cal. 2013) ("Indeed, the parties cite no cases, and the Court has found none, directly applying either of California's continuing-wrong principles to tortious-interference claims.");[4] *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010) ("Indeed, based upon an examination of California decisions that have applied the 'continuing tort' doctrine, none have extended the doctrine to the tort of intentional interference with prospective economic advantage."). Accordingly, Plaintiffs' intentional interference with contract claim against Omni will be **DISMISSED WITHOUT LEAVE TO AMEND**. *See Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").

**4) Breach of Fiduciary Duty**

Plaintiffs allege that all Defendants, except LC Investment 2010, breached their fiduciary duty to Plaintiffs. "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 483 (1998). Defendants argue that Plaintiffs have not established either a duty or a breach. Defendants maintain that although Plaintiffs allege that Defendants' fiduciary duty arose from the RMA, the RMA expressly permits Plaintiffs' alleged breach.

The Court rejects Defendants' argument that the RMA cannot have given rise to fiduciary duties. Based on the RMA's terms and description of LC Brokerage as Plaintiffs' agent, who exercises exclusive control over their villa and charged with, among other

---

[4] Like the court in *DC Comics*, the Court declines to adopt Plaintiffs' general citation to *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal.4th 1192 (2013) for the proposition that all common-law tolling doctrines applies to their tortious interference claim. *See DC Comics*, 938 F. Supp. 2d at 950 (distinguishing *Aryeh* and expressing "serious reservations about whether continuing-wrong principles could ever toll the statute of limitations on claims for tortious interference with contract").

things, maximizing the villa's rental revenues on behalf of Plaintiffs, it is reasonable to infer that a fiduciary relationship existed. *See Sierra Pacific Industries v. C*arter, 104 Cal.App.3d 579, 581 (1980) ("An agent bears a fiduciary relationship to his or her principal[.]"). Moreover, Plaintiffs allege that Omni is a sub-agent of LC Brokerage because it "stepped into LC Brokerage's shoes by taking over rental management responsibilities under the RMA." (Doc. No. 1 at 27.) The Court agrees that such allegations are sufficient to reasonably infer a fiduciary relationship. *See* Cal. Civ. Code § 2351 (sub-agent "represents the principal in like manner with the original agent"); *Streit v. Covington & Crowe*, 82 Cal.App.4th 441, 446 n. 3 (2000) ("subagent owes the same duties to the principal as does the agent"). *See also generally Pierce v. Lyman*, 1 Cal.App.4th 1093, 1104 (1991) (discussing caselaw to support a finding that one's active participation in the breach of another's fiduciary duty, even where he himself is not a fiduciary, is liable for such a breach). The Court further finds that Plaintiffs have stated a breach of fiduciary duty claim under the RMA against the Broker Defendants because they are the managing agents and licensed corporate real estate agents for LC Brokerage and are alleged to have, together with LC Brokerage, abdicated all responsibilities under the RMA to Omni. (Doc. No. 1 at 27, 28.) Moreover, for reasons similar to that explained in *supra* § III.2, Defendants' arguments that the RMA forecloses a breach of fiduciary duty is unavailing at this stage of the litigation. In sum, there being adequate allegations to support the existence of a fiduciary duty and a breach, the Court rejects Defendants' motion to dismiss on these bases.[5]

### 5) Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs allege that Broker Defendants aided and abetted a breach of fiduciary duty. "To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary

---

[5] Because the Court finds that a fiduciary duty arose from the RMA, the Court need not address in this section whether Plaintiffs stated facts sufficient to allege that a fiduciary duty arose from Bus. & Prof. Code § 10131(b).

wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty." *In re Mortgage Fund '08 LLC*, 527 B.R. 351, 361 (N.D. Cal. 2015). Defendants argue that Plaintiffs' complaint does not allege acts that would amount to "substantial assistance" in Omni or LC Brokerage's alleged breach of fiduciary duty.

The complaint, however, alleges that Broker Defendants knew that LC Brokerage never supervised or administered the rental program, that Omni has always administered and controlled the program with no supervision by LC Brokerage, and that they knew, at the time buyers signed the RMA, that LC Brokerage would have no responsibility for the rental program yet did not disclose this fact to the buyers. (Doc. No. 1 at 9, 15.) The complaint also alleges that Broker Defendants enabled the alleged self-dealing scheme "by lending their licenses to LC Brokerage in order to establish a separate licensed entity to countersign the RMA with villa owners." (*Id.* at 15.) The complaint goes on to state that as brokers of record, Broker Defendants "were specifically aware that LC Brokerage was the signatory to the RMA, yet they did nothing to manage or supervise the rental program. Instead, they ignored their professional responsibilities and enabled Omni to perpetrate its scheme to self-deal." (*Id.*) The Court finds that these factual allegations, coupled with the reasonable inferences drawn therefrom, sufficiently show Broker Defendants' "substantial assistance" in Omni or LC Brokerage's alleged breach of fiduciary duty. Accordingly, the Court declines to dismiss Plaintiffs' aiding and abetting claim.

### 6) Violations of Bus. & Prof. Code § 17200 et seq.

Plaintiffs assert a cause of action arising under Section 17200 of the California Business and Professions Code (UCL) against all Defendants, alleging that they have set up a lucrative scheme to bilk villa rental revenue. The UCL prohibits business acts or practices that are "unlawful, unfair or fraudulent" Cal. Bus. & Prof. Code § 17200. "Each of these three prongs constitutes a separate and independent cause of action." *Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034, 1042 (S.D. Cal. 2016) (citation omitted).

### A. Unlawful Prong

"[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Property Management, Inc*. 152 Cal.App.4th 1544, 1554 (2007). As the predicate for their UCL claim under the unlawful prong, Plaintiffs allege that Defendants have violated Cal. Bus. & Prof. Code § 10131(b). According to Plaintiffs, "contrary to the statutory scheme governing the duties of real estate brokers and licensed real estate corporations, Omni runs the rental program without a corporate real estate license and without the supervision of any licensed real estate agent." (Doc. No. 1 at 30.) Plaintiffs further allege that Broker Defendants have "breached their statutory obligations by failing to supervise the rental program ostensibly run by Defendant LC Brokerage." (*Id.*) Defendants, however, argue that the real estate broker and related requirements under § 10131(b) do not apply, and Plaintiffs' complaint fails to address the clearly applicable exceptions to § 10131(b). The Court agrees.

The parties do not dispute that § 10131(b) does not apply to hotel managers or transient occupancies (30 days or less) in a dwelling unit in a common interest development. Cal. Bus. & Prof. Code § 10131.01. Assuming the truth of Plaintiffs' allegations that the villas "are like hotel rooms," and that they "are vacation-rental properties," it appears from the face of the complaint that the transient occupancy exception to § 10131(b) applies. Plaintiffs' failure to plead facts to disclaim the apparent exception therefore supports dismissal of their UCL claim under the unlawful prong. Accordingly, as Plaintiffs' have failed to identify an "unlawful" predicate, their UCL claim under the unlawful prong will be **DISMISSED WITH LEAVE TO AMEND**. Inclusion of additional facts may cure the aforementioned deficiency. *See* Fed. R. Civ. P. 15(a); *Cook*, 911 F.2d at 247.

### B. Unfair Prong

To state a claim under the unfair prong of the UCL, a plaintiff needs to plead conduct that is unfair because it (1) "offends an established public policy" or (2) "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the utility

of that conduct is outweighed by the harm to the consumer. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). Plaintiffs allege that the Defendants' "scheme is immoral, unethical, oppressive, substantially injurious, and has no countervailing benefit or reason for its purpose." (Doc. No. 1 at 30.) Plaintiffs provided various allegations in their complaint to show that Defendants conspired with each other to surreptitiously hand rental management control to Omni, which purposefully steered guests into hotel rooms over the villas, earning tens of millions of dollars at Plaintiffs' and the Class' expense. (*See id.* at 9–12, 28–30.) The complaint's description of the purported self-dealing scheme contain detailed facts sufficient to raise a reasonable inference of "unfair" conduct. Thus, assuming Plaintiffs' allegations to be true and construing all reasonable inferences therefrom in the light most favorable to them, the Court finds that Plaintiffs have adequately pled a claim under the unfair prong of the UCL.

### C. Fraudulent Prong

To state a claim under the fraudulent prong of the UCL, courts utilize the "reasonable consumer" standard, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal citation and quotation marks omitted). If a UCL claim is grounded in alleged fraud, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Additionally, the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009). "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *Id.* (alterations omitted).

Defendants argue that Plaintiffs' sole allegation of reliance is directed only at LC Brokerage, and as such, they have failed to plead a UCL claim under the fraud prong against the other defendants. The Court agrees. Defendants further argue that Plaintiffs cannot state facts to support reliance because the complaint makes plain that the villas were

developed and sold in the mid-2000s by the prior owner of the Resort. The complaint also establishes that none of the defendants were involved in the development or operations of the Resort at that time. Defendants contend that because any alleged inducement occurred prior to Defendants' involvement, Plaintiffs' fraud claim is not actionable against them. Plaintiffs offered no response to this specific argument, but instead, generally asserted that they have satisfied the elements of the fraud prong. As the Court does not find that amendment would be futile with respect to this claim, Plaintiffs' UCL claim under the fraud prong will be **DISMISSED WITH LEAVE TO AMEND**.

### 7) Violations of 18 U.S.C. § 1962(c)

Plaintiffs also allege a claim under 18 U.SC. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against Omni, LC Brokerage, and Broker Defendants. The statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). A prima facie case for RICO under § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Plaintiffs must also show harm of a specific business or property interest by the racketeering conduct. *Id.*; *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir.2005). "Racketeering activity" is any act indictable under the several provisions of Title 18 of the United States Code, including the predicate acts alleged by plaintiffs in this case: mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343). *See* 18 U.S.C. § 1961(1); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).

Defendants argue that Plaintiffs fail to identify, with the required particularity under Rule 9(b), predicate acts of wire fraud or mail fraud. For mail and wire fraud, a plaintiff must allege (1) formation of a scheme to defraud, (2) use of the United States mail or wire in furtherance of the scheme to defraud, and (3) specific intent to deceive or defraud. *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399–1400 (9th

Cir. 1986). Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements apply to predicate acts involving fraud. *Edwards v. Marin Park. Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). "[A] party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Allegations of mail fraud under section 1962(a)–1962(c) 'must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.'" *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citation omitted).

Upon review of the complaint, the Court finds that Plaintiffs have sufficiently pled the predicate acts of wire fraud and mail fraud. The complaint provides that Defendants "made extensive use of the mail and wires to perpetrate Omni's self-dealing" and outlined examples of such use. (Doc. No. 1 at 73.) In the examples, Plaintiffs identified specific mailings and wires alleged to have been transmitted to villa owners, including one in Texas, in furtherance of the scheme to defraud, as well as provided a particular timeline of events. (*Id.* at 73, 128.) The complaint also contains allegations pertaining to Defendants' roles in the scheme. As such, the Court rejects Defendants' contention that Plaintiffs failed to plead the predicate acts of mail and wire fraud with sufficient particularity.

Defendants additionally contend that Plaintiffs have not sufficiently alleged a pattern of racketeering. The Court disagrees. The complaint alleges that Defendants made use of monthly mailing and wirings of monies of the course of six years to various villa owners, in furtherance of the alleged scheme. As these allegations describe multiple instances of mail and wire fraud, Plaintiffs have adequately pled a "pattern of racketeering activity" as required for RICO. *See, e.g.*, *In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 1953584, at *7 (S.D. Cal. Apr. 23, 2020). Accordingly, for the foregoing reasons, the Court finds that Plaintiffs have adequately pled a RICO claim.[6]

---

[6] Defendants additionally challenge the sufficiency of Plaintiffs' RICO claim for failure to state the element of "enterprise." (Doc. No. 26 at 13.) However, because Defendants raise this argument for the first time in their reply brief, the Court need not consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

**8) Violations of 18 U.S.C. § 1962(d)**

Defendants' only challenge to Plaintiffs' claim under the RICO conspiracy statute, 18 U.S.C. § 1962(d), rests on a finding that there is no substantive violation of RICO. However, as previously discussed, Plaintiffs adequately asserted an underlying RICO cause of action. *See supra* § III.7. Consequently, because Plaintiffs stated a RICO claim, Defendants' challenge against the RICO conspiracy claim fails.

**9) Declaratory Relief**

While federal courts do not have a duty to grant declaratory judgment, it may do so in the exercise its discretion. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Additionally, for a court to grant declaratory relief, "the actual controversy between the parties must relate to a claim upon which relief can be granted." *CRV Imperial-Worthington, LP v. Gemini Ins. Co.,* 770 F. Supp. 2d 1070, 1072–73 (S.D. Cal. 2011) (internal quotation marks and citation omitted).

Plaintiffs request declaratory relief against Omni and LC Investment that "rental guests under the UMA are entitled to access to the Resort on the same terms and conditions as rental guests under the RMA." (Doc. No. 1 at 36.) According to the complaint, the UMA "is a separate agreement that owners must sign upon purchase." (*Id.* at 4.) "The UMA requires Plaintiffs to pay $100/night or 20% of their rental revenue, whichever is greater, to Defendant LC Investment 2010, if they opt to rent their units outside of the RMA." (*Id.*) Plaintiffs allege that "[d]espite the fact that both the RMA and the UMA are silent as to whether rental guests are given access to the Resort's amenities, Omni has taken the position in other litigation that only guests under the RMA are permitted to use the Resort's amenities." (*Id.* at 18, 35) Plaintiffs further allege that "[t]he first villa owner to rent outside of the RMA and only under the UMA, Matthew Palmer, has been granted Resort access

15

for his guests under the UMA." (*Id.* at 38.) Additionally, the decision in the *Erskine* lawsuit requires Erskine's rental guests to "be granted Resort access under the UMA under the same terms and conditions as guests under the RMA[.]" (*Id.*)

The complaint reveals that the parties disagree over whether rental guests under the UMA are entitled access to Resort amenities. Although this issue has been resolved in the *Erksine* lawsuit, Defendants continue to take the position that rental guests under the UMA are only entitled to use amenities around the villa buildings, such as villa pools—not the full Resort amenities. Defendants' continued practice of prohibiting access to Resort amenities frustrates Plaintiffs' ability to exit the RMA. As such, Plaintiffs maintain that consistent with Defendants' pre-litigation practice on this issue and the findings in the *Erksine* suit, the UMA guests must be granted access to Resort amenities on the same terms and conditions as RMA guests. Assuming Plaintiffs' allegations to be true, the Court finds that there is a substantial actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, and that the controversy relates to the causes of action asserted in this case. *See MedImmune, Inc.*, 549 U.S. at 127.

**10)   Unjust Enrichment**

Defendants initially moved to dismiss Plaintiffs' unjust enrichment cause of action, but they have since withdrawn their motion. (Doc. No. 26 at 13.) As such, the Court need not consider that motion.

**11)   Accounting**

Plaintiffs assert that they have a right to accounting against Omni, LC Brokerage, and LC Investment for profits improperly obtained by them. "An accounting is an equitable proceeding which is proper where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debts and credits on the books to determine what is due and owing." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1136–37 (2014). "Equitable principles govern, and the plaintiff must show the legal remedy is inadequate." *Id.* at 1137. Moreover, "[a]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that

can be made certain by calculation." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).

Defendants argue that Plaintiffs fail to allege complexity of accounts justifying an accounting, and that they fail to allege that the information they seek cannot be obtained during the course of discovery. The Court agrees. The complaint is devoid of allegations to show that a legal remedy is inadequate and that the monies sought cannot be ascertained without an accounting action. *See Prakashpalan*, 223 Cal.App.4th at 1137; *Teselle v. McLoughlin*, 173 Cal. App. 4th at 179. Accordingly, Plaintiffs' accounting claim will be **DISMISSED WITH LEAVE TO AMEND**. Inclusion of additional facts may cure the aforementioned deficiency. *See* Fed. R. Civ. P. 15(a); *Cook*, 911 F.2d at 247.

Lastly, the Court notes that Plaintiffs' opposition brief did not contest Defendants' motion to dismiss Ginsberg for failure to allege wrongful acts during her tenure as broker-of-record for LC Brokerage from "April 2012 until March 2015." (Doc. No. 1 at 5.) Defendants also assert that all of Plaintiffs' claims against Ginsberg are barred by their respective statutes of limitation. As Plaintiffs failed to oppose this motion, the Court finds that Plaintiffs have abandoned their claims against Ginsberg. *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims") (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005)); *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 2:10–4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Accordingly, Defendant Ginsberg will be **DISMISSED** from this action.

//
//
//

## IV. CONCLUSION

Based on the foregoing, the Court enters the following orders:

- Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**. (Doc. Nos. 19, 20.)
- Plaintiffs' breach of contract claim against Omni is **DISMISSED WITH LEAVE TO AMEND**.
- Plaintiffs' intentional interference with contract claim against Omni is **DISMISSED WITHOUT LEAVE TO AMEND**.
- Plaintiffs' UCL claim under the unlawful prong is **DISMISSED WITH LEAVE TO AMEND**.
- Plaintiffs' UCL claim under the fraud prong is **DISMISSED WITH LEAVE TO AMEND**.
- Plaintiffs' accounting claim is **DISMISSED WITH LEAVE TO AMEND**.
- Defendant Ginsberg is **DISMISSED** from this action.
- Should Plaintiffs desire to amend their complaint, they must file a first amended complaint no later than Friday, April 9, 2021.
- Defendants must file a responsive pleading no later than April 23, 2021.

**IT IS SO ORDERED.**

Dated: March 29, 2021

Hon. Anthony J. Battaglia
United States District Judge