1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DEAN BEAVER and LAURIE BEAVER, | Case No.:  20-cv-00191-AJB-KSC |
| 12 | |
| 13                          Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| 14  v. | |
| 15  OMNI HOTELS MANAGEMENT CORPORATION, a Delaware | |
| 16  Corporation; LC BROKERAGE CORP., a Delaware Corporation; LC | **(Doc. No. 32)** |
| 17  INVESTMENT 2010, LLC, a Delaware Limited Liability Company; | |
| 18  KELLY GINSBERG, an individual; | |
| 19  WILLIAM IMS, an individual; BRETT | |
| 20  ALEXANDER COMBS, an individual; and DOES 1 through 50, inclusive, | |
| 21 | |
| 22                          Defendants. | |

23
24

Pending before the Court is Defendants Kelly Ginsberg ("Ginsberg"), William Ims

25

("Ims"), Brett Alexander Combs ("Combs"), Omni Hotels Management Corporation

26

("Omni"), LC Brokerage Corp. ("LC Brokerage"), and LC Investment 2010, LLC's ("LC

27

Investment") motion to dismiss for failure to state a claim, pursuant to Federal Rule of

28

Civil Procedure ("Rule") 12(b)(6). (Doc. No. 32.) Plaintiffs Dean Beaver and Laurie

Beaver (collectively "Plaintiffs") filed an opposition to the motion to dismiss (Doc. No. 35), to which Defendants replied. (Doc. No. 36.)  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the First Amended Complaint ("FAC").

## I.    BACKGROUND[1]

Plaintiffs are husband and wife, who jointly own a villa located in the Omni La Costa Resort and Spa ("Resort"). LC Investment owns the Resort. Like approximately 98% of villa owners at the Resort, Plaintiffs rent their villa pursuant to the terms of a Rental Management Agreement ("RMA") with LC Brokerage, a California-licensed real estate brokerage company. LC Brokerage is an affiliate of Omni, the manager of the Resort.

The core of Plaintiffs' claims concern Omni's alleged years-long scheme to self-deal through tortious and fraudulent interference with and management of the villa rental program under the RMA. According to Plaintiffs, although LC Brokerage is ostensibly charged with operating the rental program, it has quietly abdicated its responsibilities to Omni, which has used and abused its power under the RMA to intentionally steer guests into its own hotel rooms rather than the villas—causing Plaintiffs and other villa owners to lose millions of dollars.

In addition, all villas are governed by the Unit Maintenance and Operations Agreement ("UMA"), which entitles LC Investment (another Omni affiliate) to $100 per night or 20% of a villa owner's nightly rental revenue, if the owner opts not to use LC Brokerage as its managing agent. Plaintiffs state that this high cost of leaving the rental program forces villa owners into Omni's program because it is too expensive to rent outside of Omni's control. Plaintiffs claim that Omni, LC Brokerage, LC Investment, and the individual brokers-of-record for LC Brokerage (Ginsberg, Ims, and Combs), have perpetrated this RICO scheme to defraud by using LC Brokerage as an enterprise. Plaintiffs

---

[1] The Court takes the following facts from Plaintiffs' FAC. The Court construes Plaintiffs' facts as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d. 1235, 1247 (9th Cir. 2013).

20-cv-00191-AJB-KSC

bring the instant putative class action complaint against Defendants on behalf of themselves and all others similarly situated.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, i.e. whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the motion, the court "must accept as true all of the allegations contained in a complaint," but it need not accept legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.    DISCUSSION

In a prior Order granting Defendants' motion to dismiss the original complaint, the Court dismissed without leave to amend Plaintiffs' cause of action for intentional interference with contract and dismissed Defendant Ginsberg from the action. (Doc. No. 30 at 18.)[2] Additionally, the Court dismissed with leave to amend Plaintiffs' claims for breach of contract, violations of Bus. & Prof. Code § 17200 et seq., and accounting. The parties' moving papers make clear, however, that Plaintiffs have elected to amend only their breach of contract action, and that the only issue before the Court is whether Plaintiffs have stated a breach of contract claim against Omni based on an alter ego theory of liability.[3] (Doc. No. 35 at 1.)

Plaintiffs claim that neither LC Brokerage nor LC Investment are independent, and both serve as Omni's alter ego. (Doc. No. 31, FAC at ¶ 85.) Plaintiffs allege that LC

---

[2] The pincite page citations herein refer to the ECF-generated page numbers at the top of each filing.

[3] As Plaintiffs chose not to amend their causes of action for violations of Bus. & Prof. Code § 17200 et seq. and accounting, the Court dismisses those causes of action without leave to amend.

Investment is the fee simple owner of the Resort. (*Id.* at ¶ 14.) Omni manages the Resort. (*Id.* at ¶ 15.)  Omni owns a portion of the hotel rooms at the Resort. (*Id.* at ¶ 30.) Omni collects 100% of the revenue generated from renting out Omni-owned rooms. (*Id.*) Additionally, Plaintiffs own hotel rooms at the Resort. (*Id.*) Plaintiffs did not allow Omni to rent out Plaintiffs' rooms because Omni would have a conflict of interest. (Doc. No. 31, FAC at ¶ 30.) To prevent Omni from self-dealing, Plaintiffs rented out their property through LC Brokerage. (*Id.*) LC Brokerage had the exclusive right to rent out Plaintiffs' property on the Resort. (*Id.* at ¶ 16.) If Plaintiffs chose to rent out their rooms beyond the parameters of the RMA, Plaintiffs would have to pay LC Investment according to the UMA. (*Id.* at ¶ 12.) Pursuant to the RMA, LC Brokerage agreed to maximize revenues for Plaintiffs. (*Id.* at ¶ 27.)

Under California law, the theory of "alter ego" refers to situations where a court holds the owner of a corporation liable for the actions of the corporation. *Daewoo Electronics America Inc. v. Opta Corporation*, 875 F.3d 1241, 1249 (9th Cir. 2017). The Supreme Court of California has held that "the application of this doctrine is as follows: [t]he two requirements are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the [owner] no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Associated Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806 (Ct. App. 1962) (citing *Automotriz del Golfo De California S. A. De C. V. v. Resnick*, 47 Cal.2d 792 (1957)). The Court discusses in turn whether Plaintiffs' FAC contains sufficient factual allegations to support these elements.

### A. Unity of Interest

To begin, Defendants contend that to plead the unity of interest element of the alter ego doctrine, a plaintiff must allege manipulative control. (Doc. No. 32 at 11.) A review of California court decisions, however, shows that plaintiffs may plead unity of interest by alleging several other factors. *See Associated Vendors, Inc.*, 26 Cal. Rptr. at 813–16 (noting a laundry list of factors that courts have relied on in determining whether alter ego applied).

For instance, California appellate courts have relied on evidence showing the "failure to segregate funds of the separate entities" for purposes of determining alter ego. *Id.* Here, Plaintiffs allege that "LC Brokerage never received any revenue from rental of the villas or even accounted for any of that revenue in its financial statements, even though it is ostensibly Plaintiffs' rental manager." (Doc. No. 31, FAC at ¶¶ 36, 86.) Instead, Plaintiffs assert, the "rental management revenues and brokers' fees went directly to Omni controlled bank accounts." (*Id.* at ¶ 86.) These facts show that LC Brokerage and Omni shared revenue that LC Brokerage was supposed to have exclusive ownership of. The allegations also indicate that LC Brokerage and Omni did not keep their rental revenue in separate, distinct bank accounts. As such, there is a reasonable inference that LC Brokerage and Omni failed to segregate LC Brokerage's funds from Omni's funds. Assuming the truth of these allegations and the reasonable inferences drawn therefrom, the Court finds that they demonstrate that Omni and LC Brokerage "failed to segregate funds of the separate entities."[4] *Associated Vendors, Inc.*, 26 Cal. Rptr. at 813–16.

Another factor supporting the unity of interest element is "the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities." *Id.* at 815–16. Here, Plaintiffs allege that in a prior related case, "Defendant Ims, the broker of record for LC Brokerage, testified that LC Brokerage has zero employees, no regular office hours, an office on the property of [the Resort], and that he was unaware of the identity of LC Brokerage's corporate officers, suggesting the entity was nothing but a sham." (Doc. No. 31, FAC at ¶ 87.) These facts reveal that LC Brokerage's broker of record could not identify who managed and controlled the company. As such, there is a reasonable inference that LC

---

[4] As previously noted, Plaintiffs allege that LC Investment is also an alter ego of Omni; they similarly claim that LC Investment did not receive revenue from rentals despite owning the Resort. (Doc. No. 31, FAC at ¶¶ 14, 86.) Defendants do not meaningfully challenge the sufficiency of Plaintiffs' alter ego claim concerning LC Investment and Omni. Indeed, they make only a passing reference to this argument in a footnote in their reply brief. (Doc. No. 36 at 4 n.1.) As a "district court need not consider arguments raised for the first time in a reply brief," the Court declines to consider Defendants' late assertion. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

20-cv-00191-AJB-KSC

Brokerage concealed the identity of the company's responsible ownership and management. Moreover, the Court finds that the allegation concerning Ims' prior testimony that LC Brokerage did not have regular office hours suggests that the company did not have regular business to conduct. (*Id.* at ¶ 87.) Assuming the allegations as true and construing them in the light most favorable to Plaintiffs, the Court finds there to be sufficient facts to show that LC Brokerage and Omni concealed and misrepresented LC Brokerage's ownership and management. *See Associated Vendors, Inc.*, 26 Cal. Rptr. at 815–16.

An additional factor relevant to the unity of interest element is "the use of the same office or business location." *Id.* at 814. Here, Plaintiffs allege that LC Brokerage's office was located on the Omni-managed Resort. (Doc. No. 31, FAC at ¶¶ 16, 87, 89.) Plaintiffs also allege that LC Brokerage, LC Investment, and Omni all disclosed "the same address for their principal executive office and mailing addresses" within their respective filings with the Secretary of State. (*Id.* at ¶ 89.) These facts indicate that LC Brokerage's and Omni's respective executives work in the same location. The companies' use of the same office or business location therefore provides further support for the unity of interest element of Plaintiffs' alter ego theory. *See Associated Vendors, Inc.*, 26 Cal. Rptr. at 814.

Yet another factor demonstrating a unity of interest is "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation." *Id*. Here, Plaintiffs allege that LC Brokerage was an affiliate of Omni. (Doc. No. 31, FAC at ¶ 8.) Plaintiffs believed that LC Brokerage would run the rental program on Plaintiffs' behalf. (*Id.* at ¶ 16.) Pursuant to the RMA, LC Brokerage agreed to maximize revenues for Plaintiffs. (*Id.* at ¶ 27.) Plaintiffs allege that "LC Brokerage owed fiduciary duties of loyalty and candor to villa owners with respect to its rental management." (*Id.* at ¶ 32.) Plaintiffs assert that, in practice, LC Brokerage was not involved with the rental program. (*Id.* at ¶ 9.) Omni, rather than LC Brokerage, controlled the rental program. (*Id.*) Plaintiffs also allege that "Ginsberg and Ims have both conceded that they knew at the time buyers signed the RMA that LC Brokerage would have no responsibility for the rental program, but [Ginsberg and Ims] never disclosed such a fact to

buyers." (Doc. No. 31, FAC at ¶ 36.) After Omni sold units at the Resort to a class of buyers which included Plaintiffs, LC Brokerage abruptly "ceased operations" in August 2017. (*Id.* at ¶ 16.)

Accepting these facts as true, there is a reasonable inference that Omni used LC Brokerage to make it appear as though there was an independent intermediary between Omni and potential buyers such as Plaintiffs, and that LC Brokerage existed merely to assist Omni in a self-dealing scheme. Indeed, the FAC contains allegations that in a prior related litigation, LC Brokerage's brokers of record, "Ginsberg and Ims have both admitted under oath that LC Brokerage has never supervised or administered the rental program. Instead, both of these brokers testified that Omni has always administered and controlled the rental program with no supervision by LC Brokerage." (Doc. No. 31, FAC at ¶ 36.) Based on the foregoing, the Court finds that Plaintiffs have pled sufficient facts to show that Omni used LC Brokerage "as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation." *Associated Vendors, Inc.*, 26 Cal. Rptr. at 814.

Accordingly, the Court finds that Plaintiffs have plausibly pled a "failure to segregate funds," the concealment of LC Brokerage's "ownership and management," "the use of the same office or business location," and "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation"—all of which are factors that invoke the unity of interest prong of the alter ego doctrine. *See id.* at 813–16.

**B. Inequitable Result**

Next, the second alter ego prong requires a plaintiff to show that, "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Automotriz del Golfo De California S. A. De C. V.*, 47 Cal.2d at 796. "Before a corporation's acts and obligations can be legally recognized as those of [another corporation], and vice versa, it must be made to appear that . . . an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote

injustice." *Associated Vendors, Inc.*, 26 Cal. Rptr. at 813. "Finding an 'inequitable result' under the second element of alter ego liability 'generally require[s] some evidence of bad faith conduct on the part of defendants.'" *Daewoo Electronics America Inc.*, 875 F.3d at 1249 (quoting *Smith v. Simmons*, 638 F.Supp.2d 1180, 1191 (E.D. Cal. 2009)). While "difficulty in enforcing a judgment does not alone satisfy [the inequitable result] element," *Leek v. Copper*, 125 Cal. Rptr. 3d 56, 70 (Ct. App. 2011), precluding a plaintiff from collecting its judgment by treating an alter ego as a separate entity would be inequitable, *Butler America, LLC v. Aviation Assurance Company, LLC*, 269 Cal. Rptr. 3d 284, 293 (Ct. App. 2020).

In this case, Plaintiffs' FAC alleges facts from which the Court can reasonably infer that an inequitable result would follow if LC Brokerage's acts were treated as if they were its acts alone. First, Plaintiffs allege facts supporting the inference that while LC Brokerage was still operational, LC Brokerage was either noncapitalized or undercapitalized because it did not receive any rental revenue. (Doc. No. 31, FAC at ¶ 86.) Second, Plaintiffs allege that the rental revenue intended for LC Brokerage were directed to Omni-controlled bank accounts. (*Id.*) Third, Plaintiffs also allege that LC Brokerage was a sham corporation without employees or corporate officers. (*Id.* at ¶ 87.) And fourth, Plaintiffs allege that LC Brokerage abruptly "ceased operations" in August 2017. (*Id.* at ¶ 16.)

The Court finds unavailing Defendants' argument that the FAC does not specifically allege that LC Brokerage could not satisfy a judgment entered against it. (Doc. No. 36 at 5.) Based on Plaintiffs' allegations that LC Brokerage was noncapitalized and ceased operations years ago, the Court can reasonably infer that LC Brokerage could not satisfy a judgment. Additionally, as previously discussed, the FAC contains allegations indicating that LC Brokerage was a mere shell for Omni's self-dealing. (Doc. No. 31, FAC at ¶¶ 11, 33, 34, 60–64, 73–76, 85–95.). Plaintiffs' allegations therefore indicate that adherence to the fiction of LC Brokerage as a separate entity would sanction a fraud or promote injustice in this case. *See Associated Vendors, Inc.*, 26 Cal. Rptr. at 813.

The Court also finds that Plaintiffs have pled allegations sufficient to indicate bad faith on the part of Omni. *Daewoo Electronics America Inc.*, 875 F.3d at 1249; *Associated Vendors, Inc.*, 26 Cal. Rptr. at 813 (stating "bad faith in one form or another is an underlying consideration and will be found in some form or another in those cases wherein the trial court was justified in disregarding the corporate entity"). Considering Plaintiffs' allegations that LC Brokerage is a sham rental corporation with no rental revenues, employees, or corporate officers, and existed to assist in Omni's self-dealing, the Court finds that precluding the application of the alter ego theory may "sanction a fraud or promote injustice" in this case. *Associated Vendors, Inc.*, 26 Cal. Rptr. at 813. Consequently, the Court finds that Plaintiffs have adequately pled the second element of the alter ego doctrine.

In sum, having found that Plaintiffs sufficiently pled facts showing unity of interest and inequitable result, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' breach of contract claim.

## IV.   CONCLUSION

Accordingly, for the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the FAC. (Doc. No. 32.) Specifically, the Court dismisses without leave to amend the causes of action for which Plaintiffs were previously afforded an opportunity to but did not amend. As such, the Court grants Defendants' motion as to those claims.[5] The Court, however, declines to dismiss Plaintiffs' breach of contract claim against Omni, and therefore denies Defendants' motion as to that claim.

**IT IS SO ORDERED.**

Dated:  October 29, 2021

Hon. Anthony J. Battaglia
United States District Judge

---

[5] As noted earlier, these include Plaintiffs' unamended claims for accounting and violation of the unlawful and fraud prongs of the UCL. Additionally, the Court notes that Defendant Ginsberg was dismissed from this action pursuant to the Court's Order on the first motion to dismiss in this case. (Doc. No. 30.)

20-cv-00191-AJB-KSC